[No. 187-3. Division Three. March 17, 1971.]

WILL ROGERS FARM AGENCY, INC., et al., *Respondents,* v. BETTY L. STAFFORD, *Appellant.*

*William C. Harrison,* for appellant.

*Joseph P. Delay* (of *Delay, Curran & Boling*), for respondents.

GREEN, J.—Defendant, Betty L. Stafford, appeals from a judgment and decree of forfeiture quieting title to certain real property in plaintiffs, Will Rogers Farm Agency, Inc. and James F. and Lillye Bishop.

On December 27, 1965, defendant purchased a farm from one Rhoads for $27,500. Defendant made a downpayment in excess of $6,000 and assumed two mortgages: one to the Federal Land Bank of Spokane for $7,406.96, and the other to Metropolitan Mortgage and Securities for $5,050.50. The remaining balance of $9,565.30, including a $930 deferred real estate commission, was payable to Rhoads in monthly installments commencing 1 month after the last payment on the mortgage to Metropolitan, with interest at 6 per cent per annum. The sale agreement contained a forfeiture provision. At the time, defendant was a divorced woman with four minor children; the purchase was made with her separate property.

Subsequently, plaintiffs acquired Rhoads' interest in the property. In early January, 1966, a fire destroyed the dwelling house on the premises. The Federal Land Bank and Metropolitan insisted the fire insurance proceeds totaling $5,000 be applied on their mortgages. Plaintiffs decided to pay off the two mortgage holders. As a consequence, on April 27, 1966, a supplemental agreement was executed between plaintiffs and defendant. It provided in place of the two mortgages totaling $12,457.46, defendant would pay to plaintiffs $15,000 at the rate of $125 or more per month including interest beginning June 3, 1966, the declining balances to bear interest at 7 per cent per annum from April 27, 1966. The contract balance of $9,565.30 was

502

to be paid $900 or more including interest on November 15, 1966, $1,380 including interest on November 15, 1967, and a like amount on the 15th day of every November thereafter until fully paid, the unpaid balances to bear interest at 6 per cent from January 1, 1966. Defendant retained $2,500·of the insurance proceeds and the remaining $2,500 was paid to plaintiff Will Rogers Agency for application to the contract balance.

Defendant failed to make prompt payments under the agreement. Plaintiffs sent three notices of forfeiture to defendant prior to 1969. Each of these notices was subsequently withdrawn. On June 9, 1969, plaintiffs sent defendant a notice of forfeiture stating defendant was in default $2,375 consisting of 19 monthly installments of $125 for the period December 1967 through June 3, 1969. When the default was not cured within 30 days and defendant refused to surrender possession of the premises, plaintiffs brought this action to confirm the forfeiture, quiet title in plaintiffs, and recover reasonable attorney's fees.

Immediately prior to commencement of trial on October 22, 1969, defendant paid into the registry of the court $3,140, sufficient to bring the contract payments up to date and reimburse plaintiffs for reasonable attorney's fees and costs. Plaintiffs rejected the payment, refused to reinstate the contract, and the matter proceeded to trial. The trial judge allowed defendant until June 30, 1970 to pay off the entire balance and granted plaintiffs $750 as reasonable attorney's fees plus costs; provided, however, if defendant failed to pay off the contract within the grace period, forfeiture was confirmed in plaintiffs.

█ The rules applicable to forfeitures were summarized in *Dill v. Zielke*, 26 Wn.2d 246, 173 P.2d 977 (1946):

We are cognizant of the well-established rule in this state that, where time is made of the essence of a contract of sale, the vendor may declare a forfeiture of the contract for the nonpayment of the purchase price or any installment thereof. [Citing cases.]

It is equally well established, however, that forfeitures are not favored in law and are never enforced in equity

unless the right thereto is so clear as to permit of no denial. [Citing cases.]

Recognizing the hardship that often attends a strict enforcement of a forfeiture provision, and confronted with a situation where such enforcement would do violence to the principle of substantial justice between the parties concerned, under the particular facts of a case, the courts of this state have frequently relieved a party from default of payment on an executory contract involving real estate by extending to such a person a "period of grace" within which to make such payments. [Citing cases.]

Defendant contends the trial court committed error in refusing to direct plaintiffs to accept the tender of $3,140, reinstate the contract and dismiss the action. The essence of defendant's position is that no grace period was required because defendant prior to trial deposited enough money into court to make the contract current, pay reasonable attorney's fees and costs. The contended error, if any, rests upon the trial court's determination that the balance of the contract should be paid in full on or before June 30, 1970, i.e., within 8 months from the date of trial.

Defendant has assigned error to the trial court's finding and conclusion that reinstatement of the defaulted contract would "seriously endanger the financial stability of the plaintiffs." The only testimony supporting this finding and conclusion is that of Mr. Rogers and Mr. Bishop. Rogers testified he paid $6,000 for the Rhoads interest ($9,565.30) in the original sale agreement and to make the purchase he borrowed $4,000; only a little of this loan is still owing. Bishop testified he borrowed $13,000 from his father to pay off the two existing mortgages and has paid the current interest on the loan, but none of the principal. Neither Bishop nor Rogers testified as to any facts that indicate reinstatement of the contract would "seriously endanger their financial stability."

Further, the evidence does not reflect that if the contract had been reinstated there was little likelihood defendant would be able to keep up the contract payments

504

as the court found in *State ex rel. Foley v. Superior Court*, 57 Wn.2d 571, 574, 358 P.2d 550 (1961):

> In this case we do not think that the trial court would have been in error in denying relief to the relator if he had proposed only to bring his payment up to date. His financial condition and prospects were such as to offer little hope that he could make his payments promptly and regularly in the future, and consequently it would have been unjust to the sellers to subject them to the probable necessity of bringing another law suit for future defaults.

The record shows that after the 1966 fire, defendant and her four children moved to Seattle. She left a neighbor to care for the hay being raised on the farm. Defendant realized nothing from the hay because the neighbor went bankrupt. Additionally, timber was removed from the premises without the proceeds being applied on the contract because her former husband obtained the money and would not pay her. Shortly after moving to Seattle, one of defendant's children was seriously injured in an accident resulting in extraordinary medical expenses. The children at the time of trial resided on the farm with defendant's relatives. Unlike *Foley*, the court in the instant case found these hardships to have passed (finding of fact No. 13):

> that defendant is now earning from two jobs a net sum of $800 a month and her husband is now earning $600 a month, and defendant expends little or no funds for food and is splitting the cost of a room with her husband. That defendant's expenses for living are low, and her husband is contributing nothing to her support. The combined net income of defendant and her husband is $1400 a month. *The defendant is now in a position where she is working and the hardships she has encountered have passed.*

(Italics ours.)[1]

In *John R. Hansen, Inc. v. Pacific Int'l Corp.*, 76 Wn.2d 220, 229, 455 P.2d 946 (1969), the court said:

> *In Foley, we recognized the general rule that a forfeiture can be avoided by a simple tender of overdue*

[1]It appears from the record that sometime after defendant's return to Seattle, she and her former husband were remarried.

*payments bringing the contractual obligations up to date. In fact, this rule is the one favored by this court in such cases.* However, in *Foley,* we explicitly recognized, . . . our approval of an alternative course of action where such relief would seriously threaten the financial stability of the seller. In other words, more than a simple updating of the contract may be required by the trial court, and steps may be taken to protect a seller's financial position.

(Italics ours.)

In the instant case, we do not find substantial evidence to support the trial court's finding and conclusion that reinstatement of the defaulted contract would "seriously endanger the financial stability of the plaintiffs." Since defendant would suffer a substantial financial loss if her contract rights were forfeited, with no corresponding loss to plaintiffs if the contract were reinstated, we find the trial court erred in refusing to order reinstatement.

The judgment is accordingly reversed, except as to that portion allowing plaintiffs reasonable attorney's fees in the sum of $750 and costs; provided, however, that defendant is required, within 60 days from the date of the remittitur herein, to bring all payments due under the contract between the parties to a current status. In the event defendant fails to comply with the foregoing proviso, the existing judgment forfeiting the contract and quieting title in plaintiffs is automatically affirmed. Each party shall pay his own attorney's fees and costs on appeal.

Munson, C.J., and Evans, J., concur.