[No. 8263-9-I.   Division One.   April 20, 1981.]

R. WAYNE BENSON, ET AL, *Respondents*, v. EUGENE P. MCGOVERN, ET AL, *Appellants*.

*Casey, Pruzan, Kovarik & Shulkin, Zachary Mosner,* and *A. J. Hutton, Jr.,* for appellants.

*Craig P. Hayes,* for respondents.

DURHAM, J.—The purchasers under a real estate contract appeal from a summary judgment declaring forfeiture unless certain conditions are satisfied.

On October 25, 1976, appellants Eugene P. McGovern and Margaret McGovern, as purchasers, entered into a real estate contract with respondents R. Wayne Benson and Kathryn Benson, as sellers. The 15–year contract, involving a total purchase price of $435,000, provided for monthly payments of $3,700 at 10 percent interest per annum. It contained a standard "time is of the essence" clause, permitting forfeiture in the event of the purchasers' default.

After the McGoverns missed paying their June 1 and July 1, 1979, monthly installments, the Bensons served them with a "Notice of Intention to Declare a Forfeiture of and Cancel Contract", followed by a "Notice of Forfeiture of Contract". The McGoverns did not respond to either notice.

The Bensons then filed a complaint for forfeiture. The McGoverns answered by admitting all of the Bensons' allegations, and tendering a $19,374.03 check into the court registry to bring the contract, together with interest, attorneys' fees, and costs, current through October 1, 1979, conditioning the tender upon reinstatement of the contract. The answer alleged that in the future the McGoverns would either keep the contract current or refinance.

The Bensons moved for summary judgment based upon the pleadings and the affidavit of R. Wayne Benson. In his affidavit, Benson stated that he pays $3,090 per month on the underlying mortgage out of the $3,700 per month the McGoverns are supposed to pay him. The affidavit described the McGoverns' regular pattern of missed or delinquent contract payments since July 1977. According to

the affidavit, the "Notice of Intention to Declare a Forfeiture of and Cancel Contract" precipitating this action was the third such notice served upon the McGoverns within 6 months; after each prior notice, either the contract was reinstated or the McGoverns brought the contract current before any legal action commenced. Benson's affidavit stated that due to "the gross number of problems I have had with obtaining payment," compounded by his obligation to pay the underlying mortgage, "I do not feel it would be reasonable, nor fair, to do anything other than forfeit the [McGoverns] from their interest in this real estate contract." The affidavit was supported by photocopies of Benson's ledger cards.

The only opposing affidavit was that of Coralie L. McCormick, an employee of the Turkey House, Inc., which apparently leased the subject property from the McGoverns. McGovern did not file an affidavit on his own behalf. McCormick's affidavit stated that in the past, McGovern "counted upon" rental payments due him from the Bellingham Turkey House, which were $5,214.87 per month under the lease, from which to make his monthly payments on the Benson contract. The Turkey House, however, had been a debtor–in–possession in Chapter 11 proceedings since June 29, 1979, and had not paid McGovern any rent since February 1979. McCormick stated that McGovern had "serious personal financial difficulty in recent months" because he invested $300,000 into the Turkey House operation from 1973 to 1978.[1] She further stated that the Chapter 11 proceedings should leave the Bellingham Turkey House an "independent and viable operation", and that under its present management, it

is now operating on a sound cash–flow basis, and anticipates being able to meet its on–going obligations, including that for rent, as they come due. This will permit Mr. McGovern henceforth to make timely the payments

---

[1] The record does not indicate the precise business relationship between McGovern and the Turkey House. Appellants' brief states that McGovern was the principal in the corporation.

required under his contract with the Bensons.

An order for summary judgment in favor of the Bensons was entered on November 8, 1979. The order stated that the facts as set forth in both the Benson and McCormick affidavits were undisputed. The court ordered that judgment be entered forfeiting the McGoverns' interest in the contract, unless the McGoverns: (1) pay the Bensons the $19,374.03 already paid into court; (2) pay the required $3,700 monthly, beginning November 1, 1979; and (3) on or before May 1, 1980, pay off the then remaining contract balance plus interest;[2] in which case the contract could be reinstated. The order was made subject to reconsideration at the instance of either party and further order of the court.

The sole issue in this appeal is if the trial court erred by ordering a forfeiture, subject to reinstatement of the contract if the full balance was paid within 6 months. The McGoverns contend that forfeitures are not favored, and that in the absence of a finding that the Bensons' financial stability was threatened, the court had a duty to reinstate the contract upon tender of the delinquent payments. The Bensons contend that recurring defaults are a sufficient reason to deny reinstatement of the contract, and that the trial court balanced the equities and fashioned a remedy that does not work an undue hardship on the purchaser or threaten the financial stability of the seller.

■ ■ Generally, a forfeiture can be avoided by a tender of overdue payments bringing the contractual relationship to date, unless the financial stability of the seller is threatened through recurring default or otherwise. *John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969); *State ex rel. Foley v. Superior Court,* 57 Wn.2d 571, 358 P.2d 550 (1961); *Chambers v. Cranston,* 16 Wn. App. 543, 558 P.2d 271 (1976). In cases involving recurring default, some courts have ordered forfeiture, subject to a

---

[2]The principal contract balance was $432,487.16 as of May 16, 1979, the last regular contract payment.

"grace period" in which the purchaser may redeem his interest by paying the entire contract balance in full. *See, e.g., Ryker v. Stidham,* 17 Wn. App. 83, 561 P.2d 1103 (1977). A contract should not be reinstated if there is "little hope" that the purchaser could make his payments promptly and regularly, *Foley,* at 574–75, or if in light of the purchaser's conduct throughout the life of the contract, it is clear that "possible future defaults, . . . could be expected to occur" which would seriously endanger the financial stability of the seller, *Hansen,* at 233. Under such circumstances, the trial court may take steps to protect a seller's financial position, and balance the equities to reach an equitable and reasonable resolution of the controversy. *Hansen,* at 230.

The McGoverns rely upon *Will Rogers Farm Agency, Inc. v. Stafford,* 4 Wn. App. 500, 482 P.2d 336 (1971). There the trial court allowed the defendant an 8–month grace period to pay off the entire contract balance, but decreed forfeiture in favor of the plaintiffs should the defendant fail to comply. Division Three of the Court of Appeals reversed, holding that there was no substantial evidence to support the trial court's finding that reinstatement of the contract would "'seriously endanger the financial stability of the plaintiffs.'" *Will Rogers,* at 505. Given the facts in *Will Rogers* we would agree; after a financially disastrous period, the defendant there had reversed her financial position, and, in fact, the trial court noted that "[t]he defendant is now in a position where she is working and the hardships she has encountered have passed." (Italics omitted.) *Will Rogers,* at 504. The *Will Rogers* court also stated that "[n]either [of the contract holders] testified as to any facts that indicate reinstatement of the contract would 'seriously endanger their financial stability'", *Will Rogers,* at 503, and noted that the underlying mortgage obligations of the contract holders were relatively light.

The facts here support the opposite conclusion. McGovern had been consistently late in payments, as

Benson's affidavit shows in great detail.[3] The record also reflects that Benson pays $3,090 per month on his underlying mortgage out of the $3,700 he was to receive from the McGoverns. Finally, the affidavit submitted by the administrative assistant for Turkey House, Inc., on behalf of McGovern is merely a conclusionary statement that their financial problems are now resolved, reflecting little more

---

[3]Benson stated: "The defendants failed to make any payments at all during the month of July, 1977. Finally, on August 22, 1977, I had my attorney, Craig P. Hayes, send Mr. McGovern a letter. That letter is attached hereto and incorporated herein by reference. Finally, on August 29, 1977, I received the payments that were due on July 1, 1977, and August 1, 1977.

"The September 1, 1977, payment was not received until September 19, 1977. Then the defendants totally missed the October, 1977 payment but, made two payments on November 9, 1977. The December 1, 1977, payment was not received until December 28, 1977. During 1978, things got even worse. The January 1, 1978, payment was not received until January 20, 1978. No payment was made in February, at all. I did receive a payment on March 2, 1978, which I credited to the payment due on February 1, 1978. On April 27, 1978, I received the payments which were due on March 1, 1978 and April 1, 1978. I received no payments in May, 1978, however, I did receive a payment on June 5, 1978, which I credited to the payment due on May 1, 1978. The June 1, 1978, payment was not received until July 11, 1978. Then I received the July 1, 1978, payment on August 11, 1978. For several months, through October of 1978, the defendants continued to be over one month late in making their payments.

"Then things got even worse. After the defendants made their October 1978, payment on November 16, 1978, no further payments were received until February 13, 1979. At that time, I contacted my attorney concerning these delinquencies. Attached hereto and incorporated herein by reference is a "Notice of Intention to Declare A Forfeiture Of And Cancel Contract" which was sent to the defendants on January 16, 1979. This Notice was sent because of the defendants' failure to pay the installments due on November 1, December 1, 1978 and January 1, 1979. Still no payments were received. Finally, on February 1, 1979, my attorney sent a "Notice Of Forfeiture Of Contract" to the defendants. This document, as well as the postage receipts, are attached hereto. Finally, I received the payments for November, 1978, December, 1978, January, 1979, and February, 1979, on February 13, 1979. Even though we had declared the contract forfeited, I felt, in fairness to the defendants, that it would be okay to allow them reinstatement.

"Even though we had gone through these previous problems, the March 1, 1979, payment was not received until March 22, 1979. The April 1, 1979, payment was not received until April 25, 1979. Once again, since I did not receive the April 1, 1979, payment, I had my attorney send out another "Notice Of Intention To Declare A Forfeiture Of And Cancel Contract". It was only after receiving that Notice that payment was received. A copy of that document is attached hereto and incorporated herein by reference. The May 1, 1979, payment was not received until May 16, 1979. That is the last payment I have received on this contract."

than good intentions.

We are satisfied that the trial court properly exercised its discretion by balancing the equities. The record shows that the court was concerned about the purchasers' ability to refinance the contract:

> One of the things that is persuasive to me with respect to the decision for it [the contract] to be paid in full is the contract is worth substantially more now and has some appreciation and some improvements that have been made. Recognizing we have a tight money market, that would seem to be of assistance in refinancing a contract, . . .

In addition, the court's decision on the summary judgment motion was quite open ended. The court said:

> Oh, I think the efforts to refinance ought to be diligent and ongoing. The Court will allow Mr. McGovern to have a period of six months to see what efforts can be made and if it appears that a review ought to be made at the end of that time—well, if it appears that the contract is not paid in full at the end of that time, we will have a review and make such additional order as may be indicated.

and the order for summary judgment specifically provided: "The relief granted herein is subject to reconsideration at the instance of either plaintiffs or defendants, and further order of this court."

■ McGovern also claims that the trial court erred in failing to make a specific finding that the seller's financial stability was threatened. The proceedings here were conducted pursuant to CR 56, summary judgment, and a finding as such would generally be inappropriate. In the order for summary judgment, the court noted that it had considered the affidavits discussed above, found no material issues of fact, and entered judgment as a matter of law. We believe that the record before us fully complies with the principles expressed in *Hansen* and *Foley*.

The order for summary judgment is affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.